**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **THOMAS MAJCHROWSKI & ASSOCIATES, INC. dba TERESCRIPTION,** a California corporation | | |
| | | **Case No. 1:25-cv-486** |
| *Plaintiff,* | | |
| | | **JURY TRIAL DEMANDED** |
| **v.** | | |
| **REV.COM, INC.,** a Delaware corporation | | |
| *Defendant.* | | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Thomas Majchrowski & Associates, Inc. d/b/a Terescription ("Terescription" or "Plaintiff"), files this Complaint against Rev.com, Inc. ("Rev") and alleges:

## I.     PARTIES

1.      Plaintiff Terescription is a California corporation having a principal place of business at 10815 Meads, Orange, California 92869.

2.      Upon information and belief, Defendant Rev is a Delaware corporation having its headquarters at 1717 W. 6th St., Suite 310, Austin, Texas 78703.

## II.     JURISDICTION AND VENUE

3.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. §§ 271, 281, and 284.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1338(a).

5.      This Court has personal jurisdiction over Rev because: (a) Rev has its principal place of business in Texas; (b) Rev has systematic and continuous contacts with this District, which is demonstrated, for example, by the terms of service for Rev.com, which are governed by Texas law; (c) Rev has committed acts of patent infringement in Texas and this District, including at least by making, using, selling, and/or offering for sale infringing software ("Accused Software Products"), such as Rev's interactive transcript editor, available upon information and belief from this District, through rev.com (rev.com/transcript-editor), which Rev knew would be used within this District and has upon information and belief sold to the University of Texas at Austin. Accordingly, this Court's jurisdiction over Rev comports with the constitutional standards of fair play and substantial justice and arises directly from Rev's purposeful minimum contacts with the State of Texas.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because: (a) Rev has committed acts of patent infringement in Texas and (b) Rev has a regular and established place of business in Texas at 1717 W. 6th St., Suite 310, Austin, Texas 78703.

### III.      THE PATENTS

7.      The U.S. Patent and Trademark Office issued U.S. Pat. No. 8,577,683 ("the '683 Patent"), titled "Multipurpose Media Players," on November 5, 2013. A copy of the '683 Patent (including a certificate of correction dated March 21, 2017) is attached as Exhibit A.

8.      The U.S. Patent and Trademark Office issued U.S. Pat. No. 8,204,750 ("the '750 Patent"), titled "Multipurpose Media Players," on June 19, 2012. A copy of the '750 Patent is attached as Exhibit B.

9.      The U.S. Patent and Trademark Office issued U.S. Pat. No. 11,467,706 ("the '706 Patent"), titled "Multipurpose Media Players," on October 11, 2022. A copy of the '706 Patent is attached as Exhibit C.

10.      Terescription is the owner by assignment of the '683 Patent, the '750 Patent, and the '706 Patent (collectively, "Asserted Patents").

11.      Rev does not have any license, authorization, consent, or permission from Terescription to make, use, offer to sell, or sell any product embodying the subject matter of any claim of the Asserted Patents.

### COUNT I – PATENT INFRINGEMENT OF THE '683 PATENT AND DAMAGES

12.      Terescription incorporates by reference the preceding paragraphs.

13.      At the time of the invention of the '683 Patent, traditional digital media players were severely limited in their capabilities to navigate the voluminous amounts of digital video data necessary to produce reality television programming. While these digital media players were

useful for a user to play, pause, rewind, and fast-forward through a digital video file, these digital media players could not navigate a large volume of digital video to review the content in an efficient manner. *See* Ex. A, the '683 Patent, at 1:58-62 and 5:48-53. The conventional functions did not enable a user to navigate between a transcript file and a digital video as claimed.

14.    Realizing that conventional digital video software did not offer an adequate technical solution for the digital video services industry, particularly for the entertainment industry, Ms. DeWitt, the sole inventor of the Asserted Patents, sought a viable, unconventional, and innovative alternative to conventional digital video player software. The '683 Patent solved these problems, for example, by use of "embedded . . . time stamp[s]" in connection with the navigation of digital video using software. Special-purpose instruction sets include the technical innovation of the use of embedded time stamps and text hyperlinks, as recited in one or more of the claims. *See* Ex. A, the '683 Patent, at 11:18-52 ("The special-purpose instruction sets according to the present invention include . . . [an] instruction set enabl[ing] the user to click on hyperlinks in the text data file to cause the media player to go to specific time points in the media being played.").

15.    As explained in the '683 Patent, the ordered combination of software instructions in, for example, claim 14 of the '683 Patent offer a technical solution to a technical problem and is configured to navigate digital audio and/or video by activating transcript text hyperlinks associated with transcript embedded time stamps.

16.    The claims of the '683 Patent are not abstract, and are therefore, patent eligible under 35 U.S.C. § 101 and *Alice*.

17.    The claims of the '683 Patent are patent eligible under step two of *Alice* because each claim, taken element-by-element or as a whole, includes an inventive concept and unconventional technology.

18.     Rev has directly infringed, literally and/or under the doctrine of equivalents, at least claim 14 of the '683 Patent in this District and elsewhere by at least making, selling, using, and/or offering for sale the Accused Software Products. Rev's infringement is described further below with respect to representative claim 14 of the '683 Patent. The allegations below are made on information and belief based on publicly available information and are likely to have evidentiary support after reasonable opportunity for further investigation or discovery.

19.     Rev has also indirectly infringed by contributing to or inducing others to infringe at least claim 14 of the '683 Patent pursuant to 35 U.S.C. §271(b)-(c). Rev has known of the '683 Patent and its past infringement at least since the filing date of this Complaint. Upon information and belief, Rev actively induced infringement of one or more claims of the '683 Patent, under 35 U.S.C. §271(b), by actively encouraging and instructing its customers and users to perform, as described below, the method of the '683 Patent through the use of the Accused Software. Further, upon information and belief, despite knowledge of the '683 Patent, Rev intended to contribute to patent infringement by third-parties by selling, offering to sell, and/or supplying materials for use in performing the patented methods of the '683 Patent by end users and consumers, including by providing especially made or adapted code (including the webcode) for use in infringing the '683 Patent, wherein that code is not a staple article or commodity of commerce suitable for substantial non-infringing use, and Rev received valuable consideration in exchange. For example, Rev provides software, access, and links to its editor. Rev also provides detailed instructions such as at https://www.rev.com/blog/rev-transcript-editor-guide directing users how to use this software.

20.     Upon information and belief, Rev was aware of Ms. DeWitt's efforts, Terescription's patents, and its infringement thereof and to the extent Rev was unaware that it was encouraging its customers and end users to infringe the '683 Patent, or contributing to such

infringement, its lack of knowledge was based on being willfully blind to the possibility that its acts would cause infringement.

21.    The preamble of claim 14 states, "[a] computer-implemented method that directs a data processor configured with a set of instructions to play a digital medium and to display a transcript comprising a series of words associated with the digital medium." The Accused Software Products are methods carried out on a computer as evidenced at least by Rev's own marketing of the Accused Software Products:

> With the right tools, transcripts can be more than static text. We believe that a transcript should be an interactive product that aligns with our customers' workflow. For us, that means building a suite of powerful tools that enable Rev subscription customers to review, notate, and collaborate — all in one easy to access editor.
>
> This is the **Rev Transcript Editor**. Built to deliver insights beyond the transcript, for you and your team. Want to learn how to take your transcription workflow to the next level? Read on!
>
> Note that you need to be subscribed to Rev's services in order to use the Transcript Editor.

(https://www.rev.com/blog/rev-transcript-editor-guide).

22.    The Accused Software Products include a data processor and instructions that play videos as shown in the annotated screenshot below:



23.    As shown above, the Accused Software Products also display a transcript of the words spoken in the video.

24.    Claim 14 also recites the method comprises "displaying at least a portion of the transcript associated with the digital medium, one or more words in the series of words being hyperlinked providing a text hyperlink, the transcript embedded with a time stamp representing a time code of the digital medium associated."  As shown below, a user can navigate the video by clicking the words in the transcript of the Accused Software Products, which serve as text hyperlinks and correspond to specific time codes of the digital medium.



25.     Rev.com also clarifies that "when text is copied [from the transcription], hyperlinks will not be included to timestamps." (https://support.rev.com/hc/en-us/articles/360036047411-Using-the-Transcript-Editor#h_01J6Y8YZPH99B57CQFAD5DW0AC.)

26.     The transcripts of the Accused Software Products are embedded with time stamps. In fact, Rev markets these features and profits from these features as shown below:

# Timestamps

Know exactly where you are in the transcript, so referencing location can be that much easier.

If you've paid the extra $0.25/minute to include timestamps in your transcript order, the Transcript Editor allows you to view them on every word – down to the second.

Simply highlight any word in the transcript to surface the selection toolbar. On the selection toolbar, you'll find a play button labeled with the timestamp of that location. Pressing this timestamp play button will play your media beginning one second before, so you can hear that word in context of the phrase or sentence. You can also view timestamps at the beginning of every speaker monologue, located next to the speaker name.

(https://www.rev.com/blog/rev-transcript-editor-guide.)

27.     Claim 14 further recites "receiving an activation of the text hyperlink." Rev's own website indicates "[j]ump around the media by clicking around the transcript." (*See* https://www.rev.com/blog/rev-transcript-editor-guide.)

28.     Claim 14 further recites "upon receipt of the text hyperlink activation, playing the digital medium starting at the time code associated with the embedded time stamp." The Accused Software Products play the video from the time code associated with the embedded time stamp when clicked as described in paragraphs 22-25.

29.     Rev sells transcription services on a per minute basis to produce interactive transcripts of customers' media files, *e.g.,* videos.

30.     Rev's customers need to access and use the Accused Software Products to use Rev's interactive transcripts.

31.     The Accused Software Products create the value of Rev's transcription services for producing interactive transcripts. For example, Rev indicates "[w]e believe that a transcript should be an interactive product that aligns with our customers' workflow. For us, that means building a suite of powerful tools that enable Rev subscription customers to review, notate, and collaborate

8

– all in one easy to access Editor. This is the Rev Transcript Editor. Built to deliver insights beyond the transcript, for you and your team." (https://www.rev.com/blog/rev-transcript-editor-guide.)

32.    Terescription has sustained damages as a direct and proximate result of the infringement of the '683 Patent by Rev including as a result of Rev's sale of transcription services to produce interactive transcripts used through the Accused Software Products.

33.    As a consequence of the infringement by Rev of the '683 Patent, Terescription is entitled to recover damages in the form of, at a minimum, a reasonable royalty.

## COUNT II – PATENT INFRINGEMENT OF THE '750 PATENT AND DAMAGES

34.    Terescription incorporates by reference the preceding paragraphs.

35.    At the time of the invention of the '750 Patent, traditional digital media players were severely limited in their capabilities to navigate the voluminous amounts of digital video data necessary to produce reality television programming. While these digital media players were useful for a user to play, pause, rewind, and fast-forward through a digital video file, these digital media players could not navigate a large volume of digital video to review the content in an efficient manner. *See* Ex. B, the '750 Patent, at 1:53-57 and 5:37-42. The conventional functions do not enable a user to navigate between a transcript file and digital video.

36.    Realizing that conventional digital video software did not offer an adequate technical solution for the digital video services industry, particularly for the entertainment industry, Ms. DeWitt sought a viable, unconventional, and innovative alternative to conventional digital video player software. The '750 Patent solved these problems by use of "time stamps" in connection with the navigation of digital video using software. Special-purpose instruction sets include the technical innovation of the use of time stamps, as recited in one or more of the claims. *See* Ex. B, the '750 Patent at 11:6-24 ("The special-purpose instruction sets according to the

present invention include . . . [an] instruction set that directs data processor 110 . . . to detect an input request by a user to insert a timestamp.").

37.    As explained in the '750 Patent, the ordered combination of software instructions in, for example, claim 32 of the '750 Patent offer a technical solution to a technical problem and is configured to navigate digital audio and/or video through time stamp inserted in a data file.

38.    The claims of the '750 Patent are not abstract, and are therefore, patent eligible under 35 U.S.C. § 101 and *Alice*.

39.    The claims of the '750 Patent are patent eligible under step two of *Alice* because each claim, taken element-by-element or as a whole, includes an inventive concept and unconventional technology.

40.    Rev has directly infringed, literally and/or under the doctrine of equivalents, at least claim 32 of the '750 Patent in this district and elsewhere by at least making, selling, using, and/or offering for sale the Accused Software Products. Rev's infringement is described further below with respect to exemplary claim 32 of the '750 Patent. The allegations below are made on information and belief based on publicly available information and are likely to have evidentiary support after reasonable opportunity for further investigation or discovery.

41.    Rev has also indirectly infringed by contributing to or inducing others to infringe at least claim 32 of the '750 Patent pursuant to 35 U.S.C. §271(b)-(c). Rev has known of the '750 Patent and its past infringement at least since the filing date of this Complaint. Upon information and belief, Rev actively induced infringement of one or more claims of the '750 Patent, under 35 U.S.C. §271(b), by actively encouraging and instructing its customers and users to perform, as described below, the method of the '750 Patent through the use of the Accused Software. Further, upon information and belief, despite knowledge of the '750 Patent, Rev intended to contribute to patent infringement by third-parties by selling, offering to sell, and/or supplying materials for use

in performing the patented methods of the '750 Patent by end users and consumers, including by providing especially made or adapted code (including the webcode) for use in infringing the '750 Patent, wherein that code is not a staple article or commodity of commerce suitable for substantial non-infringing use, and Rev received valuable consideration in exchange. For example, Rev provides software, access, and links to its editor. Rev also provides detailed instructions such as at https://www.rev.com/blog/rev-transcript-editor-guide directing users how to use this software.

42.     Upon information and belief, Rev was aware of Ms. DeWitt's efforts, Terescription's patents, and its infringement thereof and to the extent Rev was unaware that it was encouraging its customers and end users to infringe the '750 Patent, or contributing to such infringement, its lack of knowledge was based on being willfully blind to the possibility that its acts would cause infringement.

43.     The preamble of claim 32 recites: "[a] method enabling a user to generate a description of a digital medium, the digital medium having at least an audio stream, video stream, or both." The Accused Software Products are methods to enable a user to generate descriptions of videos having audio. For example, Rev's website explains that the Accused Software Products generate an interface that permits users to "[l]isten or watch the source of media" and "review & edit" the provided and corresponding transcript:



44.    Users may also edit the transcript, and add comments/notes with the Accused Software Products, as described on Rev's website:



45.    Claim 32 further recites the method comprises "receiving a digital medium from a server over a network connection." The Accused Software Products receive the digital medium from a server and display it to users as shown above, for example, in paragraphs 22 and 25. Further,

Rev receives, for example, videos from users by users uploading or providing a web address, URL to the file, as shown below:



(https://www.rev.com/resources/how-to-transcribe-audio-to-text.)

46.     Claim 32 also recites "playing the digital medium to the user." The Accused Software Products play audio or video files in the "Editor's embedded media player," for example, when a user "[h]it[s] the play button or press[es] [tab]":



(https://www.rev.com/blog/rev-transcript-editor-guide; https://www.rev.com/transcript-editor/demo.)

47.    Claim 32 also recites "receiving keystrokes from a keyboard," "storing representations of the received keystrokes in a data file," and "displaying the representations of the received keystrokes on a display." The Accused Software Products receive edits, comments, and notes, for example, from a keyboard, store those edits, comments and notes in a data file, and display edits, comments, and notes on a display, as explained and shown in paragraph 44.

48.    Claim 32 also recites "sending the data file to the server over a network connection." The Accused Software Products send and store the data file in a central location. For example, multiple users may share and collaborate by accessing the central location.

## Sharing & Collaborative Editing

Easily share your transcript with your clients & your team, control read & write access, and work collaboratively to pull the insights you need – all in one centralized, up-to-date document.

We understand you don't just work alone – many of our customers work in teams or with clients to collaborate on selecting specific quotes or to discuss materials. The Rev Transcript Editor allows all your collaborators to review & edit out of a single source of truth. No more worrying about which Word file in your email inbox has the latest edits.

You can easily share your transcript from within the Editor in just three simple steps:

1. Click the Share button in the top right of the Transcript Editor
2. Select read-only or write access permissions
3. Generate a shareable link, or send an invite via email

That's all it takes!

(https://www.rev.com/blog/rev-transcript-editor-guide#:~:text=You%20can%20easily%20share%20your,send%20an%20invite%20via%20email)

49.    Claim 32 also recites "providing a preselected keystroke command to the user to enable the user to insert one or more time stamps into the data file, and wherein step (d) comprising the step of detecting an instance of the preselected keystroke command and inserting a time stamp

14

into the data file, the inserted time stamp being substantially representative of the point in the playing time of the audio stream at which the preselected keystroke command was detected." Users can insert time stamps by adding comments, as shown below:



(https://www.rev.com/transcript-editor/demo.)

15

50.    The Accused Software Products also operate with "hotkeys." A comment can be inserted by pressing "CTRL+ALT+C."



([https://support.rev.com/hc/en-us/articles/360036047411-Using-the-Transcript-Editor#h_01J6Y926Y2MA1B15MEYS1DWYKJ](https://support.rev.com/hc/en-us/articles/360036047411-Using-the-Transcript-Editor#h_01J6Y926Y2MA1B15MEYS1DWYKJ))

51.    Rev sells transcription services on a per minute basis to produce interactive transcripts of customers' media files, *e.g.,* videos.

52.    Rev's customers need to access and use the Accused Software Products to use Rev's interactive transcripts.

53.    The Accused Software Products create the value of Rev's transcription services for producing interactive transcripts.

54.    Terescription has sustained damages as a direct and proximate result of the infringement of the '750 Patent by Rev including as a result of Rev's sale of transcription services to produce interactive transcripts used through the Accused Software Products.

55.    As a consequence of the infringement by Rev of the '750 Patent, Terescription is entitled to recover damages in the form of, at a minimum, a reasonable royalty.

## COUNT III – PATENT INFRINGEMENT OF THE '706 PATENT AND DAMAGES

56.    Terescription incorporates by reference the preceding paragraphs.

57.    At the time of the invention of the '706 Patent, traditional digital media players were severely limited in their capabilities to navigate the voluminous amounts of digital video data necessary to produce reality television programming. While these digital media players were useful for a user to play, pause, rewind, and fast-forward through a digital video file, these digital media players could not navigate a large volume of digital video to review the content in an efficient manner. *See* Ex. C, the '706 Patent, at 2:1-6 and 3:65-4:5. The conventional functions do not enable a user to navigate between a transcript file and digital video.

58.    Realizing that existing digital video software did not offer an adequate technical solution for the digital video services industry, particularly for the entertainment industry, Ms. DeWitt sought a viable, unconventional, and innovative alternative to conventional digital video player software. The '706 Patent solved these problems by use of "links" and "link-clicked event[s]" in connection with the navigation of digital video using software. Special-purpose instruction sets include the technical innovation of the use of links and a wrapper program, as recited in one or more of the claims. *See* Ex. C, the '706 Patent, at 9:46-10:3 ("The special-purpose instruction sets according to the present invention include . . . [an] instruction set enabl[ing] the

user to click on hyperlinks in the text data file to cause the media player to go to specific time points in the media being played.").

59.    As explained in the '706 Patent, the ordered combination of software instructions in, for example, claim 14 of the '706 Patent offer a technical solution to a technical problem and is configured to navigate digital audio and/or video by activating links through a wrapper program.

60.    The claims of the '706 Patent are not abstract, and are therefore, patent eligible under 35 U.S.C. § 101 and *Alice*.

61.    The claims of the '706 Patent are patent eligible under step two of *Alice* because each claim, taken element-by-element or as a whole, includes an inventive concept and unconventional technology.

62.    Rev has directly infringed, literally and/or under the doctrine of equivalents, at least claim 14 of the '706 Patent in this district and elsewhere by at least making, selling, using, and/or offering for sale the Accused Software Products. Rev's infringement is described further below with respect to exemplary claim 14 of the '706 Patent. The allegations below are made on information and belief based on publicly available information and are likely to have evidentiary support after reasonable opportunity for further investigation or discovery.

63.    Rev has also indirectly infringed by contributing to or inducing others to infringe at least claim 14 of the '706 Patent pursuant to 35 U.S.C. §271(b)-(c). Rev has known of the '706 Patent and its past infringement at least since the filing date of this Complaint. Upon information and belief, Rev actively induced infringement of one or more claims of the '706 Patent, under 35 U.S.C. §271(b), by actively encouraging and instructing its customers and users to perform, as described below, the method of the '706 Patent through the use of the Accused Software. Further, upon information and belief, despite knowledge of the '706 Patent, Rev intended to contribute to patent infringement by third-parties by selling, offering to sell, and/or supplying materials for use

in performing the patented methods of the '706 Patent by end users and consumers, including by providing especially made or adapted code (including the webcode) for use in infringing the '706 Patent, wherein that code is not a staple article or commodity of commerce suitable for substantial non-infringing use, and Rev received valuable consideration in exchange. For example, Rev provides software, access, and links to its editor. Rev also provides detailed instructions such as at https://www.rev.com/blog/rev-transcript-editor-guide directing users how to use this software.

64.     Upon information and belief, Rev was aware of Ms. DeWitt's efforts, Terescription's patents, and its infringement thereof and to the extent Rev was unaware that it was encouraging its customers and end users to infringe the '706 Patent, or contributing to such infringement, its lack of knowledge was based on being willfully blind to the possibility that its acts would cause infringement.

65.     The preamble of claim 14 recites: "[a] method of video editing." The Accused Software Products are marketed as tools to streamline audio and video editing with the tagline "REV FOR VIDEO EDITING" as shown below:



(https://www.rev.com/solutions/audio-video-editing.)

66.     Claim 14 further recites the method comprises "establishing, via a wrapper program, a graphical user-interface container, the container defining a first area for displaying a media player and a second area for displaying a text-editor." As shown below, the Accused

Software Products display a media player and a text-editor respectively in a first and second area of a user interface.



67.     Claim 14 also recites "displaying text in the text-editor and a corresponding media file in the media player via one or more commands from the wrapper program to the text-editor and the media player, the text including a link that generates a link-clicked event in the text-editor"; "receiving, via the wrapper program, a time code from the text-editor when a user activates the link-clicked event"; and "issuing additional commands to the media player from the wrapper program after receiving the time code, the additional commands directing the media player to set the media file to the timecode."

68.     As shown above, in at least paragraph 66, the Accused Software Products display text in the text-editor such as the transcription of Patty, Jeff, and Ginger, which corresponds to the media file in the media player. For example, the text-editor (right) recites "Really, just stumbled

20

on them through a website where they post" and the subtitle (left) of the media file similarly recites the same.

69.     The text of the Accused Software Products include links that when clicked redirect the media file to a specific time code as shown below:



70.    Rev sells transcription services on a per minute basis to produce interactive transcripts of customers' media files, *e.g.,* videos.

71.    Rev's customers need to access and use the Accused Software Products to use Rev's interactive transcripts.

72.    The Accused Software Products create the value of Rev's transcription services for producing interactive transcripts.

73.    Terescription has sustained damages as a direct and proximate result of the infringement of the '706 Patent by Rev including as a result of Rev's sale of transcription services to produce interactive transcripts used through the Accused Software Products.

74.    As a consequence of the infringement by Rev of the '706 Patent, the Terescription is entitled to recover damages in the form of, at a minimum, a reasonable royalty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Terescription prays for judgment as follows:

A.    Finding that Defendant Rev has directly and indirectly infringed, either literally or under the doctrine of equivalents, at least one claim of the '683 Patent, the '750 Patent, and the '706 Patent;

B.    Awarding all damages adequate to compensate Plaintiff Terescription for the harm suffered as a result of the infringement by Defendant Rev of the '683 Patent, the '750 Patent, and the '706 Patent, together with pre- and post-judgment interest and costs as fixed by the Court, pursuant to 35 U.S.C. §284;

C.    Entering a permanent injunction against Defendant Rev and those in privy or active convert with it against further infringement of the '683 Patent, the '750 Patent, and the '706 Patent, or alternatively, awarding Terescription a compulsory ongoing licensing fee;

D.     In the event that evidence is adduced through discovery or at trial that the infringement by Defendant Rev was willful and deliberate, awarding to Plaintiff Terescription enhanced damages pursuant to 35 U.S.C. § 284;

E.     In the event that circumstances warrant a declaration that this case be declared to be exceptional, awarding to Plaintiff Terescription reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

F.     Granting Plaintiff Terescription such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands that the issues in this case be tried by a jury.


Dated:  April 1, 2025

**BROOKS KUSHMAN P.C.**

By: /s/ Reza Roghani Esfahani
Reza Roghani Esfahani (MI P83787)
150 W Second Street, Suite 400N
Royal Oak, MI 48067
Tel: (248) 358-4400 / Fax: (248) 358-3351
resfahani@brookskushman.com

*Attorney for Plaintiff*